UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] Order Regarding Motions for Summary Judgment [199, 200]**

Plaintiff Denison Powerlifting Association Inc. ("United States Powerlifting Association" or "USPA") filed a motion for summary judgment. (USPA's Mot., Dkt. No. 200.) Defendant John Dorsey ("Dorsey") filed an opposition. (Dorsey's Opp'n, Dkt. No. 202.) USPA replied. (USPA's Reply, Dkt. No. 208.)

Dorsey likewise filed a motion for summary judgment. (Dorsey's Mot., Dkt. No. 199.) USPA filed an opposition. (USPA's Opp'n, Dkt. No. 204.) Dorsey replied. (Dorsey's Reply, Dkt. No. 209.)

For the following reasons, the Court **GRANTS in part and DENIES in part** Dorsey's motion for summary judgment. The Court **DENIES** USPA's motion for summary judgment.

## I. BACKGROUND

Defendant John Dorsey is a social media influencer and self-described "journalist" who operates under the Instagram handle @goob_u2. (Joint Statement of Undisputed Facts and Genuine Disputes ("JS"), Dkt. No. 197, at 27.) Dorsey describes himself as "[y]our favorite influencers [sic] least favorite influencer." (JS 31.) Dorsey has claimed that his Instagram page is a source of news and entertainment that covers "a variety of topics in the fitness industry that are newsworthy, of grave public concerns, or that my viewers request me to cover because of their importance." (JS 32.)

USPA is a powerlifting association that contracts with referees and meet directors

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

to host meets in different powerlifting exercises. (JS 1–2.) Steve Denison ("Denison") founded USPA in 2010. In January 2023, around the time of the dispute, USPA was run by Denison, serving as president, and Mike Tronske ("Tronske") serving as vice president. (JS 7.) USPA operates by using a network of independent contractors, including meet director, to organize and run powerlifting competitions (also called "meets" or "events") where people register to compete. (JS 8–10.) Each powerlifter must pay an annual membership fee to participate in USPA meets. (JS 11.)

On January 14, 2023, Dorsey began posting Instagram reels about USPA, including USPA officials. (JS 313.) While the parties dispute the total number of reels and posts,[1] Dorsey published between 11 and 19 reels, (JS 313), made at least four posts about USPA, (JS 324–328), appeared as a guest on the Hybrid Unlimited podcast, (JS 212), and made several comments on various Instagram posts (see, e.g., JS 198). When Dorsey began posting about USPA, he had roughly 50,000 followers on Instagram. (JS 33.) All of Dorsey's videos tagged USPA.[2] (JS 35.)

Broadly speaking, Dorsey alleges throughout his reels, posts, and comments that USPA fails to keep its members safe by allowing sexual predators and abusers into leadership positions and other employment opportunities. (See, e.g., JS 45, 59, 62–63, 97, 118–31, 150–51, 187–188, 213.) Dorsey also made a series of allegations that USPA attempted to cover up several instances of misconduct and that it had a pattern of pretending to report abuse to a Human Resources that didn't exist. (See, e.g., JS 63, 106–107, 146, 160.) USPA challenges twelve specific statements made by Dorsey and argues that these statements, in the context of all of his posts, reels, podcast appearances, and comments, demonstrate a successful defamatory social media campaign against USPA. (USPA's Mot. at 8.)

---

[1] An Instagram "reel" is a short video that a user can make and post to their page, and which Instagram will generally publish to a wider audience outside a user's followers. An Instagram "post" is a static image or short video that is generally shared among one's established followers. "Posting" refers to the act of publishing to a wider audience, which can be done with either a post or a reel.

[2] "Tagging," in the social media context, refers to the act of virtually referencing an individual in a manner that can alert a user to a post or reel that they are "tagged" in, and allows other users to identify the tagged individual by their username or "handle."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

USPA filed a motion for summary judgment on its defamation claim and its intentional interference with contractual relations claim. (Id. at 9.) Dorsey filed a motion for summary judgment claiming that his statements are protected by California's anti-SLAPP statute. (Dorsey's Mot. at 11.) Dorsey also seeks summary adjudication of USPA's civil conspiracy claim. (Id. at 30.)

## II. LEGAL STANDARD

### A. *Special Motion to Strike under California's anti-SLAPP Statute*

California's anti-SLAPP statute allows for pre-trial dismissal of "SLAPPs" ("Strategic Lawsuits against Public Participation"). Cal. Civ. Proc. Code § 425.16. The statute aims to identify, early in the litigation process, "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001); see also Wilcox v. Super. Ct., 27 Cal. App. 4th 809, 816 (1994).

Courts use a two-step burden-shifting approach when reviewing anti-SLAPP motions. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003). First, the defendant must show that the activity challenged by the plaintiff was "taken in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1). The legislature specified four types of protected activity. See 425.16(e). Courts look to these statutory definitions to determine whether the anti-SLAPP statute applies. Indus. Waste & Debris Box Serv., Inc. v. Murphy, 4 Cal. App. 5th 1135, 1147 (2016).

Second, if the defendant meets its initial burden, the plaintiff must show that there is "a reasonable probability that the plaintiff will prevail on his or her . . . claim." In re NCAA Student-Athlete Name & Likeness Licensing Litig., 724 F.3d 1268, 1273 (9th Cir. 2013) (internal quotation marks omitted). At this second step, the plaintiff must show that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if [any admissible] evidence submitted by plaintiff is credited." Id. Where an anti-SLAPP motion is brought on the grounds that the plaintiff's claims are factually insufficient, the Court should instead adjudicate the motion under the standards for summary judgment under Rule 56. Planned Parenthood

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

Fed'n of Am. v. Ctr. for Med. Progress, 890 F.3d 828, 834 (9th Cir. 2018).  In doing so,
the court should dismiss the case only if, on the basis of the facts shown by the plaintiff,
"no reasonable jury could find for the plaintiff."  Metabolife, 264 F.3d at 840 (citation
and internal quotation marks omitted).

  B. *Motion for Summary Judgment*

  Summary judgment is appropriate where the record, read in the light most
favorable to the nonmovant, indicates "that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see
also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary adjudication, or
partial summary judgment "upon all or any part of [a] claim," is appropriate where there
is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R.
Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981)
("Rule 56 authorizes a summary adjudication that will often fall short of a final
determination, even of a single claim. . . ." (citation omitted)).

  Facts are "material" if they are necessary to the proof or defense of a claim, and
are determined by referring to substantive law.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  To determine if a dispute about a material fact is "genuine," the
trial court must not weigh the evidence and instead must draw all reasonable inferences
in the nonmoving party's favor.  Tolan v. Cotton, 572 U.S. 650, 655–59 (2014) (per
curiam).  The nonmoving party cannot manufacture a "genuine dispute" by relying on
allegations in the pleadings.  Anderson, 477 U.S. at 251; Oracle Am., Inc. v. Hewlett
Packard Enter. Co., 971 F.3d 1042, 1049 (9th Cir. 2020).

  A trial court may not resolve issues of credibility to determine whether a fact is
"genuinely disputed."  See Tolan, 572 U.S. at 658–59.  To do so is to improperly weigh
the evidence.  Id.  A court may discount uncorroborated, self-serving testimony where "it
states only conclusions and not facts."  Nigro v. Sears, Roebuck & Co., 784 F.3d 495,
497–98 (9th Cir. 2015).  However, a court may not discount "self-serving" testimony
that includes contrary factual assertions and requires the observation of a witness's
demeanor to assess credibility.  See Manley v. Rowley, 847 F.3d 705, 711 (9th Cir.
2017).  Furthermore, an undisputed fact may support several reasonable inferences, but a
trial judge must resolve those differing inferences in favor of the nonmoving party.  See
Tolan, 572 U.S. at 660.  In deciding a motion for summary judgment, "[t]he evidence of

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.[3]

The moving party has the initial burden of establishing the absence of a material fact for trial. <u>Id.</u> at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][4] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. To defeat summary judgment, the nonmoving party who bears the burden at trial must present more than a "mere scintilla" of "affirmative evidence." <u>Galen v. Cnty. of L.A.</u>, 477 F.3d 652, 658 (9th Cir. 2007) (citations omitted). Furthermore, the nonmoving party "must direct [the court's] attention to specific, triable facts. General references without pages or line numbers are not sufficiently specific." <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003) (citations omitted).[5] Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. <u>Fair Hous. Council of Riverside Cnty., Inc. v.</u>

---

[3] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-4.

[4] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

[5] Each fact in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Dispute of Material Fact "must be numbered and must be supported by pinpoint citations (including page and line numbers, if available) to evidence in the record." L.R. 56-1, 2, 3. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Disputes." L.R. 56-4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

### III. DISCUSSION

*A.    Dorsey's Anti-SLAPP Motion*

1.    Dorsey's Burden to Show Protected Activity

Dorsey has the initial burden to demonstrate that the challenged activity was "taken in furtherance of [his] right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1). The legislature has specified four type of protected activities, outlined in § 425.16(e), that courts use to determine whether the anti-SLAPP statute applies. See Murphy, 4 Cal. App. 5th at 1147.

Dorsey argues that his activity is protected under § 425.16(e)(3) and (4) of the anti-SLAPP statute, (see Dorsey's Mot. at 11), which protects (3) statements made ". . . in a public forum in connection with an issue of public interest," and (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public interest, Cal. Code Civ. Proc. § 425.16(e)(3)–(4).

As an initial matter, USPA argues that the anti-SLAPP statute should be denied because the commercial speech exemption applies. (USPA's Opp'n at 19.) The Court disagrees. The commercial speech exemption is narrowly construed and applies only to those whose speech was made for the purpose of promoting or securing sales. See E.D.C. Techs., Inc. v. Seidel, 225 F. Supp. 3d 1058, 1064 (N.D. Cal. 2016). In reviewing the record, the Court finds that the primary purpose of Dorsey's posts about USPA was not to sell a good or service, or to compete with USPA in the sale of a good or service. The Court will now turn to the anti-SLAPP statute to determine whether it applies.

a.    **Public Forum**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

Neither party disputes that Dorsey's statements were plainly made in a public forum.  (See Dorsey's Mot. at 12; USPA's Opp'n at 10.)  Indeed, posts on social media are routinely found to be public forums.  See, e.g., Jackson v. Mayweather, 10 Cal. App. 5th 1240, 1252 (2017) (finding that posts made to Facebook and Instagram were made in a public forum); see also Barrett v. Rosenthal, 40 Cal.4th 33, 41 n.4 (2006) (holding that websites accessible to the public constitute public forums within the meaning of the anti-SLAPP statute).  Therefore, the only remaining question is whether Dorsey's statements were made in connection with an issue of public interest.

## b.    Public Concern

While there is no definition of public concern in § 425.16, the statute generally requires that the issue have "attributes that make it one of public, rather than merely private, interest."  Grenier v. Taylor, 234 Cal. App. 4th 471, 481 (2015).  In the context of an anti-SLAPP motion, the inquiry must be on "the *specific nature of the speech* rather than the generalities that might be abstracted from it."  Id. at 481–82.  Indeed, "not every statement somewhat related to [an issue of public interest] is also a matter of public interest within the meaning of section 425.16, subdivision (e)(3) or (e)(4)."  Jackson, 10 Cal. App. 5th at 1253.

When assessing the relevant public, it is not the size of the community that matters, but rather the context of the controversy, discussion, or debate.  See Grenier, 234 Cal. App. 4th at 482 (finding that a church community of as few as 500 to 1,000 people could qualify as a "community" under California's anti-SLAPP statute); see also Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 479 (2000) (finding a group of 3,000 homeowners qualified as a "community" under California's anti-SLAPP act).  However, "where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public . . ., the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion[.]"  Du Charme v. Int'l Bhd. of Elec. Workers, 110 Cal. App. 4th 107, 119 (2003).

While matters of public interest often involve public controversies with governmental bodies, "they may also include activities that involve private persons and entities, especially when a large powerful organization may impact the lives of many individuals."  See Rivero v. Am. Fed'n of State, County, and Municipal Employees,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

AFL-CIO, 105 Cal. App. 4th 913, 922 (2003).  In a similar vein, a matter involving private conduct may nonetheless be said to "impact[] a broad segment of society. . ." and thus fall within the ambit of the public's interest.  See Damon, 85 Cal. App. 4th at 479.

USPA argues that there are two distinct controversies that should be analyzed separately to identify whether each, alone, is a matter of public interest.  (USPA's Mot. at 11.)  The Court agrees that it should focus on the specific nature of each controversy rather than mere generalities.  See Grenier, 234 Cal. App. 4th at 481–82.

The first controversy involves statements that Dorsey made surrounding Stephanie Bennett.  On January 14, 2023, Dorsey published a video on his Instagram Page about Bennett.  (JS 36.)  Bennett was a former meet director and the Vermont State Chair of USPA.  (Id. 37.)  Dorsey's video claimed to "expos[e] fitness frauds" such as "Stephanie Bennett Former USPA chair."  (Amended Joint Exhibit List ("Joint Exhibit"), Dkt. No. 191, at Ex. 152.)  In his video, Dorsey discusses two prior incidents involving Bennett. (Id.)  The first incident, chronologically, involved an email Dorsey obtained from Tyrell Sykes to USPA President Steve Denison.  (Id.)  In this email, Tyrell Sykes describes Bennett's "disconcerting" behavior at a gym meet, including: swearing around children, theft of services, and general "unbecoming" behavior for a USPA representative.  (Id. at 0:00:42.)  Denison responded to Sykes saying "I'm sorry to hear this news. We will investigate it further and get back to you. Thank you for reporting this." (Id. at 0:01:01.) Dorsey, overlaying his face on top of a screenshot of the email response, provides commentary that "Steve, the President of the USPA, just said 'we'll look into it' and never followed up."  (Id. at 0:01:01–0:01:03.)

In the same reel, Dorsey also discusses a second incident involving Bennett.  (Id.) Dorsey displays a video, posted online by Tyrell Sykes, of what appears to be Bennett rubbing her genitals on her neighbor's door.  (Id. 0:00:08–0:00:36.)  Dorsey also publishes several emails showing that USPA thanked Tyrell for sending the video to them and said they would "address it," and then asked him to "immediately remove [the] post and any other posts concerning Stephanie Bennett."  (Id. 0:01:08–0:01:14.)  Dorsey provides his commentary on this incident, stating:

They said here thank you for the video, we'll address it. And then, even though they haven't addressed it, they're telling this guy to immediately remove the post

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

and any videos concerning Stephanie Bennett. Now Steve, I think the move is for you to disassociate yourself publicly from Stephanie Bennett.

(Id. 0:01:08–0:01:22.)

USPA argues that the Bennett controversy is a private matter thus, cannot be of public interest. The Court disagrees. Where private conduct concerns a broad segment of society or the relevant community, it may become a public concern. See Damon, 85 Cal. App. 4th at 479 (finding that statements regarding a private homeowners association were still important to the broader local community). In this case, Dorsey is providing commentary about an ongoing controversy involving the misconduct of a USPA representative. While Bennett's behavior may be embarrassing to USPA and even involve a private dispute between Denison and Sykes or Bennett and her neighbor, Dorsey's speech regarding this incident was something of concern to, at minimum, the over 12,000 individuals associated with the USPA—as well as people considering joining the association—and his speech was directly related to that public interest. Cf. Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 762 (1985).[6]  Thus, Dorsey's contribution to this ongoing controversy is protected.

The second controversy described by USPA involves Dorsey's subsequent claims about "USPA's alleged lack of concern for the safety of its members." (USPA's Opp'n at 11.)  USPA argues that following Dorsey's commentary surrounding the ongoing Bennett controversy, Dorsey seized on his growing popularity by continuing to create

---

[6] USPA cites Weinberg v. Feisel, 110 Cal. App. 4th 1122 (2003) for the contention that the Bennett dispute was purely private. However, Weinberg is inapposite. In Weinberg, the court found that the defendant's campaign was meant only to discredit the defendant in the eyes of "a relatively small group of fellow collectors." Id. at 1135. Thus, the court's conclusion was akin to a finding that the defendant was merely "gath[ing] ammunition for another round of [private dispute]." See Connick v. Myers, 461 U.S. 138, 148–49 (1983). Such is not the case here, where Dorsey's speech was intended to reach a broad audience and not simply meant to smear USPA in the eyes of a few followers. Additionally, in Weinberg, the court relied on Rivero, where statements concerning the poor supervision of eight custodians, by a supervisor who had never received public attention, and regarding a controversy that only affected the eight custodians, was "hardly a matter of public interest." See Weinberg, 110 Cal. App. 4th at 1134 (citing Rivero, 105 Cal. App. 4th at 924). Again, the present case is dissimilar where the figure accused of misconduct was the leading powerlifting association in the United States and the misconduct had far-reaching implications beyond the few individuals accused of misconduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

USPA-related stories. (Id. at 12.) USPA argues that Dorsey's desire to grow his Instagram page eventually led to the second controversy: "falsely claiming that USPA does not care about the safety of its members and covers up abuses." (Id.)

The Court finds that this broad controversy also relates to a matter of public concern. As noted by Dorsey, USPA seems to concede in its motion for summary judgment that this controversy is a matter of public concern. (See USPA's Mot. at 25 ("It is undisputed that Defendant's accusations against USPA were statements involving a matter of public concern, given that they touched on sexual assaults, pedophilia, and related abuses.").) This concession is logical because the powerlifting community would likely find claims of covering up abuse, especially sexual abuse in a sport that includes minors, important. (See, e.g., JS 301–307 (undisputed messages between Dorsey and several unknown sources disclosing how Dorsey's reels changed their opinions about USPA, competing in events, serving as meet directors, and engaging with the USPA community).[7])

Nevertheless, USPA argues that because this story is only important to a limited group and was not an "ongoing controversy" before Dorsey's publications, it is not entitled to the protection of the anti-SLAPP statute. (USPA's Opp'n at 10–11 (citing Du Charme, 110 Cal. App. 4th at 119).) Specifically, USPA believes that because Dorsey *initiated* the controversy, it was therefore not "ongoing" at the time he posted. (Id.) As an initial matter, the Court disagrees with USPA's reading of the "ongoing controversy" requirement established in Du Charme. In that case, the Court dealt with statements related to a controversy that was "fait accompli" (an event that has already happened). See Du Charme, 110 Cal. App. 4th at 118. Thus, the Court held that because the controversy was no longer occurring, it did not warrant the protection of "a statute that embodies the public policy of encouraging *participation* in matters of public significance." Id. at 119. Such is not the case here, where Dorsey is being accused of *starting* the discussion that eventually became a notable controversy in the community. Indeed, by USPA's reading of Du Charme, California's anti-SLAPP statute would fail to protect the first individual to start a discussion or debate within a limited community.

---

[7] The Court overrules Dorsey's unspecified objection to hearsay. The statement is not being offered for its truth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

Even assuming, however, that starting a controversy in a limited community is
unprotected by California's anti-SLAPP statute, the evidence shows that there was a
continuous and ongoing controversy regarding safety concerns in USPA after the
Bennett controversy, which Dorsey did not initiate. Moreover, the second controversy
began as far back as 2020, three years prior to Dorsey's videos, which all occurred in
2023. (See JS 94, 313.) Dorsey's involvement has sometimes been the initiator as a
self-proclaimed journalist, (see JS 27–30) and sometimes been limited to commentary
about what others, including USPA, were saying about the controversy. (See, e.g., Joint
Exhibit 154.)

As a whole, the evidence shows that Dorsey published content on a public forum
in connection with issues of public interest. Accordingly, the Court finds that Dorsey
has met his burden of showing protected activity under § 425.16(e)(3) of California's
anti-SLAPP statute.

>    2.    Reasonable Probability of Prevailing

Unlike a challenge to legal sufficiency, when an anti-SLAPP motion challenges
the factual sufficiency of a claim, courts are instructed to apply the Rule 56 standard in
evaluating the plaintiff's evidence. See Planned Parenthood, 890 F.3d at 834. Under
Rule 56, where a defendant can show evidence negating an essential element or showing
that the nonmoving party does not have enough evidence to meet its burden of
persuasion at trial, the court may grant summary judgment against the plaintiff. Nissan
Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).
However, the court should dismiss the case only if, on the basis of the facts shown by the
plaintiff, "no reasonable jury could find for the plaintiff." Metabolife, 264 F.3d at 840
(citation and internal quotation marks omitted).

Under California law, a plaintiff may prove defamation by establishing: (1) a
publication about the plaintiff that is (2) false, (3) defamatory, (4) unprivileged, and (5)
has a natural tendency to injure or causes special damages. Laker v. Bd. of Trustees of
California State University, 32 Cal. App. 5th 745, 768 (2019). Where the allegedly
defamed individual is a public figure, he must demonstrate by clear and convincing
evidence that the statements were made with actual malice— knowledge of falsity or
reckless disregard for truth—in order to prevail. Reader's Digest Ass'n v. Superior
Court, 37 Cal.3d 244, 256 (1984).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

For the purpose of Dorsey's anti-SLAPP motion, the Court will only address the elements dispute.

### a.    USPA is a Public Figure

The question of whether a plaintiff is a public figure is to be determined by the court as a matter of law. Denney v. Lawrence, 22 Cal. App. 4th 927, 933 (1994). The designation of public figure may be given on either of two alternative bases: all-purpose or limited-purpose. Gertz v. Welch, 418 U.S. 323, 345 (1974).

### i.    All-Purpose Public Figure

An all-purpose public figure is one who has assumed a role of special prominence in the affairs of society or the community, such that they are a deemed a public figure for all purposes. Id. The designation as an all-purpose public figure should "not be lightly assumed" and must come from clear evidence of general fame or notoriety in the community. Id. at 352. An individual who is only "well known in some circles," but has "achieved no general fame or notoriety in the community," will not attain public figure status. Id. at 351–52.

However, nationwide fame is not required to be an all-purpose public figure. Waldbaum v. Fairchild Publications, Inc., 627 F.2d 1287, 1295–96 n. 22 (D.C. Cir. 1980). Rather, a plaintiff can be designated as an all-purpose public figure where the record sufficiently demonstrates that they occupy "a position of general fame and pervasive power and influence in the community in which the allegedly defamatory speech was broadcast." Stolz v. KSFM 102 FM, 30 Cal. App. 4th 195, 205 (1994). In trying to apply the definition of public figure from Gertz, some courts have strictly construed "community" in terms of the region of the defamatory speech or plaintiff's presence. See Q-Tone Broadcasting Co. v. MusicRadio of Maryland Inc., 1995 WL 875438, at *6 (Del. Super. Ct. Dec. 22, 1995) (interpreting Stolz to apply a region-based community standard). However, other courts appear to define community "by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

audience of the defamed statement[.]"  See Harris v. Tomczak, 94 F.R.D. 687, 702 (E.D. Cal. 1982).[8]

This Court agrees with the several courts that have read Gertz to allow for a more flexible test that aligns with the policy justifications underpinning public figure status. See Chapman v. Journal Concepts, Inc., 528 F. Supp. 2d 1081, 1090 (D. Haw. 2007).  As the Supreme Court in Gertz explained, "public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy."  418 U.S. at 344.  Moreover, for both good and bad, public figures have voluntarily exposed themselves to increased attention and thus, risk of injury.  Id. at 345.  These policy rationales are obvious in the context of household celebrities like Taylor Swift or Tiger Woods.  But these rationales also prove true for those who hold notoriety and general fame in the context of their particular community.  An iconic surfer may not be a household name for most, but within the surfing community, the media would provide him an effective opportunity for rebuttal.  See Chapman, 528 F. Supp. 2d at 1090.

USPA is correct that it is not an all-purpose public figure for all purposes and in all contexts.  For most people in California or the broader United States, USPA is not a household name.  Indeed, the powerlifting community is smaller than many popular sporting communities.[9]  However, within this smaller community, USPA has reached general fame and pervasive involvement such that it may be called a public figure in the powerlifting community.

---

[8] In Waldbaum, the Court concluded that "it might be appropriate to treat the plaintiff as a public figure for the segment of the audience to which he is well known and as a private individual for the rest."  Waldbaum, 627 F.3d at 1295 n.22.  This broader construction of community has been followed by other courts.  See, e.g., La Marca v. Capella Univ., 2009 WL 10698387, at * 6 (defining the relevant community as "unquestionably . . . the online education community"); accord Chapman v. Journal Concepts, Inc., 528 F. Supp. 2d 1081, 1090 (D. Haw. 2007) (finding that "a sports figure may be considered a general purpose public figure within a limited sporting community" such as the surfing community).

[9] The relatively small size of the powerlifting community may, in fact, lean in favor of a finding of public figure status and illustrates the benefits of an audience-based community standard approach.  It follows that a notable figure like USPA would stand out in a small, tight-knit community, and thus have a broader influence and more widespread reach for all purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES                    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

The undisputed evidence shows that USPA operates at the state, national, and international level of the powerlifting world.  (See JS 17, 363.)  At the time of Dorsey's videos, USPA was broken into several regions with 60 meet directors and state chairs and thousands of people in the community.  (Joint Exhibit 114.)  Additionally, the USPA website stated that USPA was the largest powerlifting federation created by lifters, for lifters.  (JS 420; Joint Exhibit 150, at 47:12–13.)  USPA boasted approximately 400 competitions nationwide.  (Joint Exhibit 150, at 48:8–10.)  Indeed, USPA Vice President Tronske conceded that prior to Dorsey's videos, USPA was likely larger than its next largest competitor, USAPO.  (Id. at 49:5–13.)  In 2020, three years before Dorsey's videos, USPA had a membership list of 12,000 to 16,000 people nationwide, (JS 422), and by the time Dorsey began posting, USPA had over 70,000 followers on Instagram, (JS 459), which surpassed Dorsey's roughly 50,000 followers, (JS 33).  See Gertz, 418 U.S. at 344 (finding that access to the media provides public figure victims an effective channel of communication to counteract false statements).  Thus, USPA is a general purpose public figure.

*ii.*    *Limited Purpose Public Figure*

Unlike its counterpart, a limited purpose public figure only becomes a public figure by injecting themselves into a particular public controversy in order to influence the issues.  Gertz, 418 U.S. at 345.  Limited purpose public figures only loses their protection to the extent that the allegedly defamatory statements relate to their involvement in the public controversy.  Reader's Digest Ass'n, 37 Cal.3d at 253– 54.  A limited public figure can only insert themselves into the public controversy *before* the defamatory statements were made.  Gallagher v. Connell, 123 Cal. App. 4th 1260, 1271 (2004).

There are three elements to establish a limited purpose public figure: (1) a public controversy, (2) a voluntary act seeking to "influence resolution of the public issue," and (3) a defamation statement relevant to the voluntary act.  Bui v. Ngo, 101 Cal. App. 5th 1061, 1073 (2024); Makaeff v. Trump Univ., LLC, 715 F.3d 254, 266 (9th Cir. 2013).  Courts are instructed to consider the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation."  Id. (internal quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

The Court finds that even if USPA were not an all-purpose public figure, USPA is a limited purpose public figure.  In this case, there was a pre-existing public controversy regarding USPA's failure to perform background checks on meet directors and its hiring of sexual offenders.  This controversy existed in September 2020 and prompted Denison to issue a letter to approximately 12,000 to 16,000 officials and members stating:

> To ensure that something this serious doesn't slip under us in the future, the USPA is implementing stricter background checks for new USPA officials.  Current USPA officials are also subject to this new protocol.

(JS 422, 425.)  Following this controversy, USPA began checking the National Sex Offender Registry.  (JS 424.)  The controversy continued into 2022, when the Stephanie Bennett video began circulating from Tyrell Sykes, an individual unrelated to Dorsey's social media campaign.  (See Joint Exhibit 152.)  In late-2022, USPA began receiving several complaints about Bennett and her behavior at meets, including a petition signed by almost 40 Vermont lifters.  (JS 342–345.)  At this time, USPA told Tyrell Sykes to take his Bennett video down.  (See id.)

The three elements of a limited purpose public figure have been satisfied.  First, there was an existing controversy regarding Stephanie Bennett, which opened a discussion about the hiring of dangerous and unfit individuals.  This controversy was not merely a private concern or topic of "curiosity," see Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1132 (2003), but was rather a matter of public concern that would affect a definable portion of the public in some meaningful way, see Hailstone v. Martinez, 169 Cal. App. 4th 728, 738 (2008) (finding that allegedly defamatory statements about misappropriating union funds significant to a "definable portion of the public, i.e., the more than 10,000 members of Local 948").

Second, USPA sought to influence the resolution of the public controversy by sending a public apology in an email to over 10,000 members.  Furthermore, USPA, through Denison, also sought to influence the controversy by telling Sykes to take down the controversial Bennett video, despite knowing that Sykes had already demonstrated a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

willingness to publicly share confidential messages between him and Denison.[10]  This participation was neither "trivial nor tangential," but rather intended to "influence the outcome" by quelling the concerns of its members.  See Waldbaum, 627 F.2d at 1297 (noting that courts should looks to the plaintiff's past conduct, extent of press coverage, and public reaction to conduct).

Third, Dorsey's first video plainly related to USPA's involvement in the Bennett controversy.  While Dorsey's future videos did not specifically relate to Stephanie Bennett, they expanded on the themes involved in the Bennett controversy—namely the alleged hiring of dangerous individuals and attempts to cover up mistakes—such that they are germane to USPA's involvement in the controversy.[11]  Therefore, USPA is a limited purpose public figure.

### b.    False Statement of Fact Made with Actual Malice

To be actionable, a defamatory statement needs to make an express or implied assertion of fact that is provably false, not merely opinion.  Weller v. American Broadcasting Companies, Inc., 232 Cal. App. 3d 991, 1006 (1991).  California applies a "totality of circumstances" test to determine whether an allegedly defamatory statement is fact or opinion.  Baker v. Los Angeles Herald Examiner, 42 Cal.3d 254, 261 (1986).  The California test requires courts to determine whether "the statements . . . (1) expressly or impliedly assert a fact that is susceptible to being proved false; and (2) whether the language and tenor is such that it cannot 'reasonably [be] interpreted as stating actual facts.'"  Weller, 232 Cal. App. 3d at 1001.  "[S]atirical, hyperbolic, imaginative, or figurative statements are protected because 'the context and the tenor of the statements

---

[10]  See Planet Aid, Inc. v. Reveal, 44 F.4th 918, 926 (9th Cir. 2022) (affirming that the voluntariness requirement is "interpreted broadly" and "can also be satisfied by a showing that a person or entity engaged in a course of conduct that foreseeable put themselves at risk of public scrutiny with respect to a limited range of issues").

[11]  Many of Dorsey's videos related directly to what Dorsey felt was USPA's failure to stay true to their public promise in September 2020, and a critique of their handling of the Stephanie Bennett controversy in 2022 and early 2023.  Dorsey's narrative then expended into a larger critique of USPA as Dorsey continued to find active members of USPA that were sexual predators or who he felt were otherwise unsafe to the powerlifting community at large.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

negate the impression that the author seriously is maintaining an assertion of fact.'" Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 385 (2004).

Further, "[a]n essential element of libel . . . is that the public in question must contain a *false* statement of fact. . . ." Copp v. Paxton, 45 Cal. App. 4th 829, 837 (1996) (emphasis added). "[I]t is not the literal truth or falsity of each word or detail used in a statement which determines whether or not it is defamatory; rather, the determinative question is whether the 'gist or sting' of the statement is true or false . . . in substance." Issa v. Applegate, 31 Cal. App. 5th 689, 702 (2019). Moreover, because the Court has found that USPA is a public figure, if USPA is able to establish the falsity of a statement, it must also show by clear and convincing evidence that the challenged statement was made with actual malice. Id. at 703–04.

As a threshold matter, the parties have appeared to clarify the challenged statements through each sides' respective briefings. Both parties have addressed twelve specific and verbatim statements that are alleged to be defamatory. (See USPA's Mot. at 15–16, 22; Dorsey's Opp'n at 14.) The Court will reference these statements and use them as a baseline for determining falsity, but notes that each statement must be taken in the context of all of Dorsey's reels, which include hundreds of statements, and the surrounding controversy.

*i.    The Stephanie Bennett Statement*

The first challenged statement relates to Dorsey's video about Stephanie Bennett.[12] (See USPA's Mot. at 15.) In his video, Dorsey discusses a set of email chains between Tyrell Sykes and Denison regarding concerning behavior of a USPA meet director Stephanie Bennett. (Joint Exhibit 152.) Dorsey then states that "this guy Steve [Denison], the President of the USPA, just says 'uh we'll look into it' and never followed up." (Id.; see also JS 45.) USPA argues that this claim is a false statement because USPA did, in fact, follow up with Tyrell Sykes. (See JS 46.) The Court finds that this statement is not an opinion, but rather a provably false statement of fact that USPA did

---

[12] See supra Section A.1.b for a more complete description of this controversy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

not "follow up" with the controversy.[13]  Whether or not USPA did, in fact, follow up with the controversy can be proven by showing steps that USPA took to remove or discipline Bennett, and is therefore, provably false

However, because USPA is a public figure, USPA must demonstrate by clear and convincing evidence that Dorsey made this statement with actual malice—knowledge of falsity or reckless disregard for the truth.  Issa, 31 Cal. App. 5th at 703–04.  In this case, the parties dispute material facts, including whether USPA had fired Bennett prior to Dorsey making the challenged statement, and the extent to which Dorsey influenced Bennett's firing.  (See JS 42–43.)  This dispute also appears to be based, in part, on issues of credibility.  The parties further dispute USPA's efforts to address Bennett's firing with the public and with Bennett herself.  (See JS 335–346.)  Accordingly, the Court finds it would be improper to bar this claim at the anti-SLAPP stage.

### ii.    The Kimberly Swett Statements

Next, USPA challenges Dorsey's two statements that Dorsey made about Kimberly Swett.  The first statement regards a comment Dorsey made about Sweet "beating" a child.  In his video on Swett, Dorsey shows a screenshot of a news article describing Swett's criminal charges and states that Swett "used to be a special needs teacher and was charged and pled no contest to beating a special needs kid."  (JS 59–60.)  The Court finds that this statement is plainly a factual assertion, not an opinion or hyperbole as suggested by Dorsey.  However, the Court agrees with Dorsey that there is no genuine dispute of fact that Swett did, in fact, physically attack a 6-year-old special

---

[13] The Court disagrees with USPA's argument that Dorsey meant "follow up" with Tyrell Sykes, opposed to generally following up on the controversy.  The context of the video supports an interpretation that he is discussing "following up" about the controversy, generally.  Moments after he makes the challenged statement, Dorsey posts more email changes between Sykes and Denison and states: "They said here, thank you for the video, we'll address it. And then, even though they haven't addressed it, they're telling this guy to immediately remove the post and any videos concerning Stephanie Bennett."  (Joint Exhibit 152.)  Dorsey's ambiguous use of the word "it," similar to his ambiguous "follow up" phasing, implies addressing the controversy.  It would make little sense for Dorsey to intend to mean that USPA never followed up with Sykes, while simultaneously showing an email exchange where USPA responded to Sykes.  Moreover, the general tenor of the video is to call out USPA's alleged failure to address the Bennett problem sooner and the attempt to cover it up; not, to highlight USPA's failure to respond to Sykes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

needs student with a knotted rope and was ordered to never work with children again.[14] (JS 353) Moreover, Dorsey published his underlying facts for the viewing public to see. (JS 315.) Whether Dorsey used the word "beat" rather than "physically attacked" does not change the "gist" of a statement that is otherwise substantially true. USPA has provided insufficient evidence to show defamation on the second challenged statement, and thus no reasonable juror could find for USPA. Accordingly, the Court **GRANTS** Dorsey's anti-SLAPP motion for this statement.

The second Swett-related statement involves Dorsey's claim that USPA lied to its members about Kimberly Swett's criminal history in an effort to cover it up. (USPA's Mot. at 22.) Prior to making the challenged statement, Dorsey posted a reel showing a conversation between him and Denison, where Dorsey asks about the background check process and criteria for being accepted at USPA "as far as criminal history goes." (Joint Exhibit 153 at 0:01:00.) Denison replies, "no sexual offenders or pedophiles." (Id.) Dorsey responds, "what about child abuse" to which Denison replied, "yes of course[.]" (Id.) Dorsey then reveals a news article about Swett, a USPA employee, showing that she pled no contest to abusing a 6-year-old special needs child. (Id. at 0:01:06.)

Dorsey then makes the challenged statement: "So either somebody lied and nobody talked about this, or you guys are willfully accepting a woman who beat a special needs child to be a referee in your federation." (Id. at 0:01:06–0:01:18.) This statement is plainly a protected opinion. Dorsey laid the foundation of evidence and then stated his opinion that either Denison lied about screening for child abusers, or conversely, that USPA hired a child abuser regardless. Even assuming this was a statement of fact, Dorsey would still prevail in showing its substantial truth. It is undisputed that USPA cleared Swett's application despite Swett disclosing that she pled no contest to child abuse. (JS 356–357.) Thus, Dorsey would be correct in saying that USPA willfully hired a woman it knew to have been a child abuser. Accordingly, because no reasonable jury could find for USPA on this statement, the Court **GRANTS** Dorsey's motion for this statement.

---

[14] USPA objects to JS 353, which includes the news article relied on by Dorsey. USPA argues that none of the supporting evidence references "beat" or "beating." USPA also objects under Federal Rule of Evidence 602 of lack of personal knowledge. The Court overrules both objections. As discussed, Dorsey's use of the word "beat" does not defeat the substantial truth of his claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES                    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

### iii.    The Mindy Layne Statements

USPA next contests two statements that relate to Mindy Layne.  The first statement involves the caption to Dorsey's reel about Mindy Layne, which stated: "There's a whole lotta crimes against children going on in your leadership."  (JS 96.)  USPA argues that this statement is false.  (USPA's Mot. at 17.)  During Dorsey's deposition, USPA asked Dorsey for the basis of this statement.  (Joint Exhibit 148 at 177:13–18.)  Dorsey replied "Kimberly Swett and Mindy Layne at the time."  (Id.; JS 97.)  The Court finds that this statement is a nonactionable opinion.  Words like "a lot" and "leadership" are largely subjective and context-specific words.  In this case, it is Dorsey's contention that two individuals found to commit crimes against children is "a lot" within the federation and that both a referee and an international judge constitute "leadership" positions within USPA.  (See Dorsey's Opp'n at 19.)

In a vacuum, the Court agrees with USPA that this statement might have been actionable.  However, Dorsey disclosed the underlying facts he felt supported his assertion through his video on January 15, 2023 regarding Swett abusing children and his video on January 16, 2023 involving Mindy Layne.  In these videos, Dorsey discloses Swett's abuse of a special needs child and Layne's conviction for sexual abuse of a minor, which provide the context for his opinion.  (See JS 153–154.)  Importantly, Dorsey made no further statement to suggest that he relied on other undisclosed facts about known child abusers.  In doing so, Dorsey ensured that the audience could understand his point of view when he says "a lot" and "leadership."  See Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 387 (2004) (discussing the basis on which an opinion statement, supported by factual disclosure, can remain actionable for defamation).  Accordingly, the Court **GRANTS** Dorsey's motion with respect to the third challenged statement.

The second statement involving Mindy Layne relates to Dorsey's accusation that USPA was hiding the fact that Mindy Layne was a registered sex offender.  (USPA's Mot. at 22.)  Mindy Layne was a USPA referee and her husband, Johnny Layne, was a meet director.  (JS 93–94.)  As explained by Dorsey, Mindy Layne had a criminal history involving sexual abuse with a minor.  (JS 109–113.)  In Dorsey's video, he claims that "[t]he only time the USPA ever brought [up Mindy's wrongdoings] was when Johnny decided he was going to start his own federation."  (JS 104.)  The clear implication of Dorsey's video is that USPA hid Mindy Layne's criminal history until it benefitted them,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |

| | |
|---|---|
| Title | Denison Powerlifting Inc v. John Dorsey et al. |

which could have been for a period of three months or longer.  (See generally Joint Exhibit 154.)  Dorsey argues that his statements are both true, and opinions.

The Court agrees with Dorsey that, given the context of the reel and the undisputed facts, these statements are opinions.  Whether or not USPA "hid" Mindy Layne's conviction status is a statement of opinion made by Dorsey after presenting all of his underlying evidence to the audience.  USPA argues that it did not "hide" Mindy Layne's conviction from its members, but rather selectively chose to withhold the information to avoid publicly humiliating Johnny and Mindy Layne, or independently, because of a settlement agreement.  (JS 109–110.)  Such as that may be, Dorsey has a right to offer his opinion about what he perceives to be the suspicious timing of when USPA decided to notify its members, directly or indirectly, about Mindy Layne.  Thus, USPA has not done enough to show that it would have a claim for defamation under the evidence it has presented.  Accordingly, the Court **GRANTS** Dorsey's motion with respect to his statement.

### iv.    The "United States P3do Association" Comment

The next challenged statement regards a comment made by Dorsey on his Instagram handle @Goob_u2 calling USPA the "United States p3do Association." (USPA's Mot. at 15.)  USPA argues that this is a false statement of fact because USPA stands for "United States Powerlifting Association."  (See id. at 17; JS 1.)  The Court finds that Dorsey's statement is plainly figurative and satirical speech, such that no reasonable jury could find for USPA.  Dorsey, as well as his audience, are likely aware that the USPA does not stand for the United States Pedophile Association and the context in which Dorsey posts would negate any impression that he is making an assertion of actual fact.  Accordingly, the Court **GRANTS** Dorsey's motion with respect to the fourth challenged statement.

### v.    The James Justice Statements

The next challenged statement relates to videos Dorsey published about James Justice, which USPA argues "falsely impl[ied] that James Justice was employed by USPA and that he was a convicted child sexual 'predator' that USPA was allowing to serve as a spotter at USPA junior meets."  (USPA's Mot. at 15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES                    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

On January 17, 2023, Dorsey published a video about James Justice on his Instagram. (JS 118.) In his video, called Justice a "dirtbag" and a "predator." (Joint Exhibit 155 at 0:00:12.) Dorsey also superimposed Justice's picture over a USPA logo and said "[t]his guy . . . loves the USPA" and "probably because they don't formally do a background check on you, any of the refs, any of the chairs, any of the judges." (Id. at 0:00:29–0:00:37.) In the same video, Dorsey introduces his next target, Bobby Morgan, chair and meet director in Texas, using the same style of superimposed picture and underlying logo. (Id. at 0:00:53.)

USPA argues that Dorsey "implied" that James Justice was an employee or leadership of USPA because Dorsey put Justice's mugshot over a USPA logo in his video. (USPA's Mot. at 18.) The Court agrees with USPA that this statement, in the context of Dorsey's other videos, strongly implies that Justice worked for USPA. While Dorsey is correct that he never explicitly refers to Justice as an employee, and at one point expressly states that "he's not a chair or ref," (Joint Exhibit 155 at 0:00:46–0:00:47,) Dorsey's video still conveys to a reasonable audience the strong implication that USPA hired Justice in some capacity. Indeed, in his second James Justice video, Dorsey plainly states "I made a mistake. I said this guy, James Justice, in my last video, was just a competitor in the USPA. It turns out, that's not the case." (Joint Exhibit 156 at 0:00:03–0:00:12.) Dorsey then states that Justice was asked to be a spotter at a juniors meet, (id.), once again implying an official role with USPA.

The implied statement that Justice was an employee of USPA is not an opinion, but rather a provably false assertion of fact. It is undisputed that Justice was never an employee of USPA. (JS 130.) Thus, this was a false statement. However, Dorsey's statement that Justice was a sexual predator is an opinion formed on the basis of disclosed underlying facts. In his first video, Dorsey shows a news article and states that Justice "was charged with sexual abuse of a child." (Joint Exhibit 155 at 0:00:14–0:00:22.) After being accused of spreading false information, Dorsey shows the news article again of Justice being "charged" with the sexual crime. (Joint Exhibit 156 at 0:00:48.) Dorsey then explains his belief that to be "charged" with this crime, it would take a call to the police, the writing up of a report, the prosecutor's decision to indict, and then an arrest warrant. (Id. at 0:00:50–0:01:16.) Dorsey then concludes that he doesn't know the reasons why the case never moved forward, but that "there was enough information to indict him" and that he believes people don't accidentally get indicted "for touching kids." (Id. at 0:01:24–0:01:29.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-00744-JVS-KES                    Date   March 3, 2025

Title   Denison Powerlifting Inc v. John Dorsey et al.

---

While Dorsey may not be fully aware of the rights of criminal defendants and the presumption of innocence, his statement that Justice "is a sexual predator" was ultimately an opinion based on fully disclosed underlying facts. The audience would be in the best position to decide whether they agree that Justice was a sexual predator based on charges, alone.[15] Because the sexual predator component of Dorsey's statement is the defamatory aspect (and not merely that Justice was employed by USPA), the Court finds that USPA has not shown an actionable false statement of fact.[16] See Jackson v. Mayweather, 10 Cal. App. 5th 1240, 1262 (finding that the allegedly false part of the defendant's posts did not expose the plaintiff to contempt, ridicule, or other reputational injury). Accordingly, the Court **GRANTS** Dorsey's motion on this statement.

### vi.    The Chico Cloyne Statements

The next two challenged statements relate to Chico Cloyne. First, USPA challenges Dorsey's claims that a female powerlifter named Erin Carrus reported a violent incident involving Chico Cloyne and that "nothing ever became of it." (JS 151.) Cloyne was the Vice President of Business Development at USPA. (JS 393.) On December 14, 2022, Tronske emailed Carrus about allegations he heard regarding a "food fight" between her and Cloyne. (JS 173.) On January 4, 2023, Carrus replied with a picture showing the injuries to her face following the fight. (JS 174.) Tronske thanked Carrus for her photograph and written explanation and then told Carrus that he was submitting the matter to "our Human Resources Rep." to determine disciplinary action. (JS 176.) Dorsey concedes that on January 11, 2023, USPA emailed its third-party HR Representative about the matter. (JS 177; Dorsey's Opp'n at 21.) Dorsey also concedes that USPA "conducted an extensive internal investigation of this incident starting in December 2022." (JS 152.)

The Court finds that these challenged statements are statements of fact—that nothing ever became of Carrus' reports—and not opinion. Dorsey argues that his

---

[15] Indeed, as Dorsey displayed in the second video, some individuals apparently agreed with his first video and reported Justice to the USPA and other individuals disagreed on the basis that there was no conviction or sentencing. (Id. at 0:00:45.)

[16] The false statement of fact (that James Justice was an employee of USPA) did not expose USPA to contempt, ridicule, or other reputational injury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES                    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

statements of fact were substantially true. (Dorsey's Opp'n at 21.) The Court disagrees. Even Dorsey appears to concede that Denison and Tronske forwarded the complaint to their third-party HR. (See id.) This would, itself, be sufficient to show that Dorsey's statement was false. Moreover, while USPA is a public figure and has the burden to show actual malice, a reasonable jury could find that Dorsey operated with a reckless disregard for the truth. Thus, this challenged claim may move forward.

The next challenged statement regarding Cloyne involves the caption to Dorsey's Cloyne video, in which he claimed USPA "brushed [Cloyne's] sandals under the rug." (JS 146.) While brushing a scandal under the rug invokes opinion-based rhetoric, the general tenor and broader context of Dorsey's speech evokes a plain fact-based assertion that USPA took steps to hide and shelter Cloyne. The factual assertion that Dorsey was making in his Cloyne video was that USPA took steps to hide Cloyne's misconduct from the powerlifting community by failing to acknowledge the misconduct publicly and pretending to report it to an HR that didn't exist.

The parties strongly dispute whether USPA was aware of complaints involving Cloyne prior to his termination. (See, e.g., JS 156–159.) However, on the undisputed evidence alone, a reasonable jury could find in favor of USPA. Part of Dorsey's evidence for this challenged claim is, itself, the false statement that nothing ever became of the Carrus report because Tronske never filed it to HR. (See Joint Exhibit 158.) Dorsey also relied on outdated audio clips from prior to Cloyne's termination and vague insinuations of undisclosed other wrongful conduct to suggest that USPA took steps to shelter Cloyne. (Id.) Moreover, USPA has met is minimum requirement to show actual malice for this statement. Thus, the Court declines to grant Dorsey's motion on this statement.

vii.    *The "Old Boys Club" Statement*

USPA also challenges a statement in Dorsey's Cloyne reel that "the whole thing we're against here is this old boys club where people in the federation do dirty things and their friends "cover it up." (JS 160.) The Court finds that this statement is a nonactionable opinion that summarizes the tenor and purpose of Dorsey's series of videos regarding USPA. Dorsey starts his video by saying that USPA fired Chico Cloyne. (Joint Exhibit 158.) Dorsey surmises that the only reason they fired him is because they were afraid of his controversy coming to light. (Id.) Before discussing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-00744-JVS-KES                    Date   March 3, 2025

Title   Denison Powerlifting Inc v. John Dorsey et al.

Cloyne specifically, he makes the challenged statement about the old boys club. (Id.)
The general tenor of the old boys club comment, in the context of Dorsey's many posts,
is to remind his audience why he makes his videos: to avoid old boys clubs. With that
context, a reasonable juror would not find that Dorsey's statement was a provably false
statement of fact that USPA is, indeed, an old boys club; but rather, would view Dorsey's
statement as an opinion and explanation for why Dorsey makes his videos. Accordingly,
the Court **GRANTS** Dorsey's motion with respect to this statement.

*viii.   The "Pattern" Statement*

The next challenged claim involves Dorsey's representation of a single email as if
USPA had a "pattern" of "always get[ting] these emails" and failing to send them to an
HR department. (USPA's Mot. at 16.) On January 4, 2023, Erin Carrus reported Chico
Cloyne to Mike Tronske. (JS 190.) Tronske replied to Carrus with an email thanking
Carrus for providing photographs and a written explanation of the incident between her
and Cloyne ("Tronsky-Carrus Email"). (Id.) It is undisputed that USPA did, in fact,
report the incident to its HR representative. (JS 192.) In Dorsey's January 23, 2023
Skogsberg video, unrelated to Carrus and Cloyne, Dorsey discusses how USPA
sanctioned a lifting meet at the gym of a registered sex offender, Aaron Skogsberg.
(Joint Exhibit 159.) During this video, Dorsey posted a photo of the Tronske-Carrus
email, with the name of the subject scratched out. (Joint Exhibit 159; JS 193.) Dorsey
then states: "Are you guys starting to see a pattern here. This guy Mike Tronske always
gets these emails and sends it to an HR department. Who's the HR department person
and why don't they ever respond to this shit?" (Id.)

The Court finds that USPA has done enough to meet its minimum requirement to
show a false statement. Dorsey's posting of the Tronske-Carrus email was misleading in
the context of a video discussing an entirely separate allegation of wrongdoing.
Dorsey's use of the single email made it appear as though Tronske sends a boilerplate
response when receiving allegations of wrongdoing. The misleading aspect of this
statement is even more apparent in light of the fact that just prior to his showing of the
Tronske-Carrus email, he shows an email from another complainant to Tronske
complaining of Skogsberg, thus implying that the Tronske-Carrus email was actually a
unique email sent to another individual complaining about Skogsberg. This appearance
is further bolstered by Dorsey's speech saying "are you guys starting to see a pattern
here" and suggesting that Tronske is lying about sending these complaints to an HR

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-00744-JVS-KES                    Date   March 3, 2025

Title     Denison Powerlifting Inc v. John Dorsey et al.

department.  Thus, while the evidence of Dorsey's subjective intent is scarce, it is
enough for USPA to meet its minimum merits.

### ix.    The Hybrid Unlimited Statements

The final challenged statement relates to Dorsey's appearance on a podcast called
Hybrid Unlimited.  (USPA's Mot. at 16.)  It is undisputed that while on the podcast,
Dorsey claimed that USPA received "a lot of reports" about members who were abused
by USPA and that they were sent to an HR email inbox where "none of them were
fucking handled."  (JS 213.)  Dorsey argues that the "gist and sting" of the statement
involving a lack of HR is true.  (Dorsey's Mot. at 25.)  The Court disagrees.  To assume
that there was an "HR email inbox" and that "none" of the complaints were handled, is
not only unsupported by the record, but contrary to it.  (See, e.g., JS 192, 203.)  While
the statement "a lot of reports" suggests an opinion-based claim, the fact that it is based
on undisclosed underlying sources places this claim out of the bounds of protected
opinion.  See Franklin, 116 Cal. App. 4th at 387.  Accordingly, USPA's claim may
continue.

In summary, the Court finds the Stephanie Bennett Statement, Chico Cloyne
Statements, the "Pattern" Statement, and the Hybrid Unlimited Statements, all survive
the anti-SLAPP motion.[17]  Thus, for these statements, the Court **DENIES** Dorsey's
motion for summary judgment.  The remaining statements are barred by California's
anti-SLAPP statute and therefore, the Court **GRANTS** Dorsey's motion for summary
judgment.

### 3.    Dorsey's Motion for Summary Judgment on USPA's Conspiracy Claim

To establish a claim for civil conspiracy, a plaintiff must plead and prove: (1) the
formation of a group of two or more persons who agreed to a common plan or design to
commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3)

---

[17] To correspond these statements to USPA's motion: The Stephanie Bennett Statement is "safety
statement" number one, the Chico Cloyne statements are "safety statement" number six and "cover-up"
statement number three, the "Pattern" statement is "safety statement" number seven, and the "hybrid
unlimited is "safety statement" number eight.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES                    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

resulting damages. See City of Industry v. City of Fillmore, 198 Cal. App. 4th 191, 212 (2011). Dorsey argues that USPA has no wrongful act where it cannot prevail on its defamation claim. (Dorsey's Mot. at 29–30.) However, as discussed, there are five viable challenged statements remaining.[18] Additionally, Dorsey argues that because USPA has settled with Defendant Joe Sullivan, there can be no "agreement" or "common design." Dorsey provides no case law to support this claim. Accordingly, the Court **DENIES** Dorsey's motion for summary judgment on the conspiracy claim.

    *B.*    *USPA's Motion for Summary Judgment*

        1.    Defamation Claim

Under California law, a plaintiff may prove defamation by establishing: (1) a publication about the plaintiff that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damages. Laker, 32 Cal. App. 5th at 768. Where the allegedly defamed individual is a public figure, he must demonstrate by clear and convincing evidence that the statements were made with actual malice— knowledge of falsity or reckless disregard for truth—in order to prevail. Issa, 31 Cal. App. 5th at 703; Reader's Digest Ass'n, 37 Cal.3d at 256.

The Court has already determined that USPA is a public figure and thus actual malice applies. The remaining question will be whether USPA can prevail on summary judgment under the traditional five elements of defamation.[19]

        **a.**    **Published Statement About Plaintiff**

---

[18] As discussed in the next section, the Court does not grant USPA's motion for summary judgment on any of these five challenged statements. That a claim in not dismissed on an anti-SLAPP motion does not mean that USPA has met is separate burden on its summary judgment motion. However, merely denying USPA's motion for summary judgment does not dismiss these remaining allegedly wrongful statements.

[19] While the Court has already considered the falsity and actual malice in Dorsey's anti-SLAPP motion, courts are instructed to consider each motion on its own merits. Fair Hous. Council of Riverside Cnty., Inc., 249 F.3d at 1136.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

A defamatory statement must specifically refer to or be "of and concerning" the plaintiff.  Blatty v. New York Times Co., 42 Cal.3d 1033, 1042 (1986).  Neither party disputes that Dorsey published his statements to the public through the use of his Instagram Page.  Rather, Dorsey argues that not all of his statements were "of and concerning" USPA.  (Dorsey's Opp'n at 14.)  Specifically, Dorsey argues that several of the statements were specifically about and related to individuals and their alleged abuses. (Id.)  Therefore, they cannot be "of and concerning" USPA.

Dorsey is mistaken.  It is undisputed that all 19 Instagram Posts and Reels about USPA in question tagged USPA.  (JS 35–36.)  Indeed, the Court can find reference to USPA either through tagging or more explicit reference for every statement cited by Dorsey for this position.  (See JS 35, 63, 119, 120, 122.)  Even putting aside the tagging, the general purpose of Dorsey's reels about each individual was meant to highlight the larger abuse and safety concerns within USPA.  (See JS 145, 151, 155, 160.)  Therefore, the challenged statements are about USPA.

### b.    Unprivileged

Neither party disputes that Dorsey's were unprivileged.  (See generally, Dorsey's Opp'n; USPA's Mot. at 19–20.)

### c.    Defamatory

A statement is defamatory when it "tends 'directly to injure [a person] in respect to [that person's] office, profession, trade or business, either by imputing to [the person] general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to [the person's] office, profession, trade, or business that has a natural tendency to lessen its profits."  Issa, 31 Cal. App. 5th at 702 (citing McGarry v. University of San Diego, 154 Cal. App. 4th 97, 112 (2007)).

Neither party disputes that the statements are defamatory in nature.  (See generally Dorsey's Opp'n (addressing other elements but not contesting the defamatory nature of statements).)  The Court agrees with USPA that the remaining challenged statements all subject USPA to ridicule or contempt such that they carry a defamatory meaning.  See Sanders v. Walsh, 219 Cal. App. 4th 855, 862 (2013).  The sting of Dorsey's remaining reels were meant to challenge USPA's unethical business conduct, including hiding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

wrongdoing and failing to report predators and violent behavior.  See Barnes-Hind, Inc.
v. Superior Court, 181 Cal. App. 3d 377, 385 (1986).

### d.    False Statement of Fact Made with Actual Malice

#### i.    The Stephanie Bennett Statement

As discussed in the anti-SLAPP section, Dorsey's statement is a provably false
statement of fact such that it was not entitled to protection under anti-SLAPP and could
thus be actionable for defamation.[20]  The Court will now address USPA's motion for
summary judgment on this statement.

The parties heavily dispute whether USPA had fired Bennett prior to Dorsey
making the challenged statement, and the extent to which Dorsey influenced Bennett's
firing.  (See JS 42–43.)  These questions are critical for determining whether Dorsey
acted with actual malice.  Both parties provide evidence of their respective positions
regarding the timing, motivations, and disclosures surrounding Bennett's firing.  The
record also contains little information about whether USPA issued a public statement
before Dorsey's video.  Because of the genuine dispute of material fact involving this
challenged statement, the Court finds it improper to resolve this challenged statement on
summary judgment.  Therefore, the Court **DENIES** summary judgment for this
statement.

#### ii.    The Chico Cloyne Statements

In examining the "nothing ever became of it" statement in a light most favorable
to Dorsey, the Court finds that USPA is not entitled to judgment as a matter of law on
this statement.  Dorsey made a plainly false statement of fact that "nothing ever became
of" Carrus' report regarding Cloyne on January 4, 2023.  As a matter of fact, it is
undisputed that Mike Tronske reported her statement to a third-party HR representative
at Bambee on January 11, 2023.  (JS 176.)  Moreover, it is undisputed that USPA
"conducted an extensive internal investigation of this incident starting in December
2022."  (JS 152.)  Thus, Dorsey's statement was false.

---

[20] See supra A.2.d.i.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES                    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

However, USPA has the burden of proving actual malice by clear and convincing evidence. USPA cannot meet this burden. Dorsey made his false statement of fact after Cloyne was fired and without contacting USPA or Cloyne to verify whether his firing had anything to do with Carrus' report. (JS 148–149.) However, the "failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice." See Reader's Digest Ass'n, 37 Cal.3d at 258. (finding no triable issue as to actual malice where publisher failed to conduct an objectively thorough investigation). In this case, there is insufficient evidence in the record, direct or circumstantial, to suggest that Dorsey had serious doubts as to the veracity of his statement. Viewing the record in a light most favorable to the non-moving party, Dorsey presented what he saw as USPA's failure to investigate the incident, based partially on information he collected from confidential sources and information he research publicly, (see, e.g., JS 154). See id. ("[S]o long as [the defendant] has no serious doubts concerning its truth, he can present but one side of the story."). Accordingly, the Court **DENIES** USPA's motion on this statement.

With regard to the second Cloyne statement that USPA "brushed [the Cloyne] scandal under the rug," the Court finds that summary judgment cannot be granted on the matter. The parties firmly dispute many of the critical facts in determining whether USPA did, in fact, brush Cloyne's scandal under the rug. Specifically, Dorsey claims that USPA received many complaints about Cloyne, involving allegations or rape, sexual assault, and physical altercations. (See, e.g., JS 156.) USPA argues that it only ever received one complaint about Cloyne being violent prior to the Carrus incident. (JS 156–157.) These facts would be necessary for determining both the falsity of the statement and any reckless disregard for truth. Thus, it would not be proper to resolve these claims at the summary judgment stage. Accordingly, the Court **DENIES** USPA's motion on this statement.

*iii.    The "Pattern" Statement*

In viewing the evidence in a light most favorable to Dorsey, the Court finds that Dorsey's representation of a single email as a "pattern" was a false statement of fact, but was not made with reckless disregard for the truth. It is undisputed that the Tronske-Carrus email is the only record Dorsey has of a matter being referred to HR by USPA. (JS 219.) However, Dorsey attempts to construe this comment about a "pattern" as an observation that there was a pattern of a failure to obtain "resolution through HR" or that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00744-JVS-KES | Date | March 3, 2025 |
|---|---|---|---|

| Title | Denison Powerlifting Inc v. John Dorsey et al. |
|---|---|

USPA failed to address these complaints publically with the community. (Dorsey's Opp'n at 22.) A plain viewing of Dorsey's video contradicts this interpretation. Dorsey puts the Tronske-Carrus email on full display and expressly states "[a]re you guys starting to see a pattern here. This guy Mike Tronske always gets *these emails* and sends it to an HR department. Who's the HR department person and why don't they ever respond to this shit?" (Joint Exhibit 159 (emphasis added).) The "pattern" referred to by Dorsey is specifically the same Tronske-Carrus email that he purports to be multiple "emails."

However, in viewing the evidence in context and in a light most favorable to Dorsey, USPA cannot show a reckless disregard for the truth. While the record tends to support that Dorsey was negligent in showing the Tronske-Carrus email during the Skogsberg video, there is no evidence in the record that Dorsey subjectively intended to mislead his audience. See Gertz, 418 U.S. at 332 (describing the necessity for a "high degree of awareness of . . . probable falsity"). Accordingly, the Court **DENIES** USPA's motion with respect to this statement.

*iv.    The Hybrid Unlimited Statements*

USPA argues that Dorsey's statements on the Hybrid Unlimited podcast were defamatory. (USPA's Mot. at 16.) Specifically, it is undisputed that while on the podcast, Dorsey claimed that USPA received "a lot of reports" about members who were abused by USPA and that they were sent to an HR email inbox where "none of them were fucking handled." (JS 213.) In viewing the evidence in a light most favorable to Dorsey, the Court finds that USPA is not entitled to judgment as a matter of law on this statement.

Much like the Cloyne statement "nothing ever became of it," there is no evidence in the record to suggest that Dorsey was doing anything other than presenting what he believed to be the truth. While Dorsey was very likely negligent in failing to investigate whether his claims were true or false, negligence is insufficient to prove actual malice. See Reader's Digest Ass'n, 37 Cal.3d at 259; Gertz, 418 U.S. at 332. Accordingly, the Court **DENIES** USPA's motion with regard to this statement.

2.    Intentional Interference with Prospective Economic Advantage

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-00744-JVS-KES    Date    March 3, 2025

Title    Denison Powerlifting Inc v. John Dorsey et al.

In California, courts will treat an intentional interference with contractual relations claim as an intentional interference with prospective economic advantage claim where the employees are at-will. Reeves v. Hanlon, 33 Cal. 4th 1140, 1152 (2004). Here, the meet directors were at-will employees, (JS 8), and thus the Court will treat the claim as an intentional interference with prospective economic advantage.

To establish a claim for intentional interference with prospective economic advantage, a plaintiff must prove: (1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts of the defendant designed to disrupt the relationship; (4) actual disruption; and (5) economic harm to the plaintiff proximately caused by acts of the defendant. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003). As with intentional interference with contractual relations, the plaintiff must plead and prove that defendant engaged in independently wrongful conduct. Id. at 1159.

USPA does not dispute that the only independently wrongful conduct it alleges is defamation with actual malice. (See USPA's Mot. at 31; USPA's Opp'n at 23.) Therefore, because the Court denied USPA's motion for summary judgment for defamation, there is no independently wrongful conduct to support judgment as a matter of law at this stage. See PMC, Inc. v. Saban Enters., Inc., 45 Cal. App. 4th 579, 602 (1996) (finding that defendant had not engaged in conduct that was wrongful by "some legal measure other than the fact of interference itself"). The Court **DENIES** USPA's motion for summary judgment on the intentional interference claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Dorsey's motion for summary judgment. Furthermore, the Court **DENIES** USPA's motion for summary judgment.

On its own motion, the Court **CONTINUES** the Final Pretrial Conference to March 24, 2025 at 11:00 AM and the Jury Trial to April 15, 2025 at 8:30 AM, to correspond with the Court's calendar for law and motion.

**IT IS SO ORDERED.**